UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-25372-CIV-ALTONAGA/Goodman

**SUSAN OWEN**,

    Plaintiff,
v.

**CARNIVAL CORPORATION**, *et al.*,

    Defendants.

_____/

## ORDER

**THIS CAUSE** came before the Court on Defendant, Dr. Dayan Fanery Campino Castillo's ("Dr. Campino['s]") Motion to Dismiss for Lack of Personal Jurisdiction [ECF No. 84], filed on April 1, 2022. Plaintiff, Susan Owen, filed a Response [ECF No. 85], to which Dr. Campino filed a Reply [ECF No. 86]. The Court has considered the Amended Complaint [ECF No. 30], the parties' written submissions, and applicable law. For the following reasons, the Motion is granted.

## I. BACKGROUND

*Facts.* Plaintiff, a citizen of Mississippi, took a trip aboard co-Defendant, Carnival Corporation's *Breeze* in December 2017. (*See* Am. Compl. ¶¶ 1, 8). The *Breeze* sailed from its home port of Galveston, Texas, to ports of call in the Gulf of Mexico and the western Caribbean. (*See* Mot., Ex. 1, Dr. Campino Dep. [ECF No. 84-1] 8:13–16, 53:11–54:16).[1]

During the trip, Plaintiff developed an eye condition that prompted her to visit the *Breeze*'s medical facilities. (*See* Am. Compl. ¶ 12). The ship's doctor, Dr. Campino, treated Plaintiff and prescribed medication to help with the condition. (*See id.* ¶¶ 10, 12). Dr. Campino did not treat

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings. Citations to deposition testimony rely on the pagination and line numbering in the original document.

Plaintiff in Florida or in Florida territorial waters, nor did Dr. Campino consult with any Florida-based Carnival personnel or medical consultants. (*See* Dr. Campino Dep. 32:11–16, 57:11–58:1).

Unfortunately, Plaintiff's vision deteriorated, resulting in a potentially permanent impairment. (*See* Am. Compl. ¶ 12). In her Amended Complaint, Plaintiff asserts claims of negligence against Dr. Campino (Count VI) (*see id.* ¶¶ 79–83); "joint venture" against Dr. Campino and Carnival (Count V) (*see id.* ¶¶ 68–78); and negligence, vicarious liability, apparent agency, and assumption of duty against Carnival (Counts I–IV) (*see id.* ¶¶ 13–67).

Dr. Campino is a Colombian national who permanently resides in Wales, the United Kingdom. (*See* Dr. Campino Dep. 4:12–17, 5:19–6:19, 51:19–21). She has served as a shipboard physician on various Carnival ships since 2016 (*see id.* 9:22–10:6), and she executed an Independent Contractor Agreement for Shipboard Physician Services [ECF No. 84-2] and Indemnity Agreement [ECF No. 84-3] with Carnival in 2017 (*see also* Dr. Campino Dep. 23:6–17).

Dr. Campino's contacts with Florida consist of opening a Bank of America checking account at a Miami branch (*see id.* 16:8–17); completing two training programs while aboard Carnival cruise ships, one near Port St. Lucie and one near Port Canaveral (*see id.* 18:16–19:15, 21:10–22:7); four visits to Florida, including one visit for an orientation with Carnival and one for a medical conference (*see id.* 36:20–39:6); and her "[i]nfrequent" treatment of patients aboard Carnival cruise ships while they are in port in Port Canaveral (*id.* 40:19 (alteration added); *see id.* 39:16–41:2).

***Procedural history.*** On March 2, 2020, Dr. Campino filed an initial Motion to Dismiss [ECF No. 51] for lack of personal jurisdiction. The Court denied the Motion without prejudice

(*see* Mar. 3, 2020 Order [ECF No. 52] 2), affording Plaintiff the right to propound jurisdictional discovery until mid-April 2020 (*see* Mar. 9, 2020 Order [ECF No. 54] 1).

On March 24, 2020, the Court administratively closed the case due to the COVID-19 pandemic and the parties' inability to proceed with the orderly progress of the case. (*See* Mar. 24, 2020 Admin. Order [ECF No. 60]). Nearly two years later, the Court reopened the case upon Plaintiff's request. (*See* Feb. 3, 2022 Order [ECF No. 63]). In a February 9, 2022 Scheduling Order [ECF No. 66], the Court afforded Plaintiff an additional five weeks of jurisdictional discovery. (*See id.* 2). Upon Plaintiff's request, the Court extended the jurisdictional discovery deadline another four days. (*See* Mar. 3, 2022 Order [ECF No. 75]).

Upon the completion of jurisdiction discovery, Dr. Campino filed the present Motion to Dismiss for Lack of Personal Jurisdiction.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a claim against her by asserting the defense of lack of personal jurisdiction. Because "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons[,]" *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (alterations added; citing Fed. R. Civ. P. 4(k)(1)(A)), a federal court sitting in Florida may properly exercise personal jurisdiction only if the requirements of (1) Florida's long-arm statute and (2) the Due Process Clause of the Fourteenth Amendment to the United States Constitution are both satisfied, *see Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999) (citation omitted).

"There are two types of personal jurisdiction: specific and general." *Madara v. Hall*, 916 F.2d 1510, 1516 n.7 (11th Cir. 1990). "General personal jurisdiction is based on a defendant's substantial activity in [a state] without regard to where the cause of action arose[,]" whereas

"specific personal jurisdiction authorizes jurisdiction over causes of action arising from or related to the defendant's actions within [a state.]" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013) (alterations added; citations omitted).

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (citations omitted). "The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *Peruyero v. Airbus S.A.S.*, 83 F. Supp. 3d 1283, 1286 (S.D. Fla. 2014) (citing *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000)). Nevertheless, "vague and conclusory allegations . . . are insufficient to establish a prima facie case of personal jurisdiction[.]" *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006) (alterations added; citation and footnote call number omitted).

If a plaintiff pleads sufficient facts to support the exercise of personal jurisdiction, "the burden shifts to the defendant to make a prima facie showing of the inapplicability of the [state's long-arm] statute." *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) (alteration added; citation omitted). "If the defendant is able to refute personal jurisdiction by sustaining its burden of challenging the plaintiff's allegations through affidavits or other competent evidence, the plaintiff must substantiate its jurisdictional allegations through affidavits, testimony, or other evidence of its own." *Peruyero*, 83 F. Supp. 3d at 1286–87 (citing *Future Tech.*, 218 F.3d at 1249).

### III. DISCUSSION

Dr. Campino contends the Court lacks personal jurisdiction over her under Florida's Long Arm Statute and under the Fourteenth Amendment. (*See generally* Mot.). Plaintiff responds with

a single counterargument: "personal jurisdiction exists over Dr. Campino based upon Plaintiff's allegations that a joint venture existed between Dr. Campino and her co-[D]efendant, Carnival Corporation." (Resp. 1 (alteration added)). Dr. Campino has the better argument.

Plaintiff maintains Carnival's contacts with Florida must be imputed to Dr. Campino for personal jurisdiction purposes by virtue of their alleged joint venture. (*See id.* 4). Certainly, "[i]f a joint venture is found, 'the members of [the] joint venture . . . are subject to a forum state's exercise of personal jurisdiction over them if the joint venture contemplates and actually involves performance in that state.'" *Terry v. Carnival Corp.*, No. 17-21036-Civ, 2018 WL 1894728 (S.D. Fla. Jan. 18, 2018) (alterations added; emphasis omitted; quoting *Sabo v. Carnival Corp.*, 762 F.3d 1330, 1337 (11th Cir. 2014)), *report and recommendation adopted*, 2018 WL 1894720 (S.D. Fla. Mar 12, 2018). But Plaintiff does not make sufficient case-specific arguments about Defendants' joint venture, instead relying almost exclusively on a similar case, *Terry v. Carnival Corporation*. (*See, e.g.*, Resp. 4 (citing 2018 WL 1894728, at *5 (S.D. Fla. 2018))). In doing so, Plaintiff fails to meet her burden of establishing personal jurisdiction over Dr. Campino.

To begin, Plaintiff attempts to "adopt[] the arguments and evidence submitted by the plaintiff in *Terry*" "[f]or the sake of brevity[.]" (*Id.* (alterations added; footnote call number omitted)). She attaches to her Response the plaintiff's brief, the shipboard doctor's deposition transcript, and various exhibits from *Terry*. (*See id.*, Exs. 1–6 [ECF Nos. 85-1–85-6]). This strategy is ill-founded for three reasons.

First, Plaintiff does not adequately explain why she relies on evidence from a different case about a different joint venture to carry her burden in showing one exists here. Perhaps the evidence could be used to show that Carnival has contacts with Florida — which is not really in doubt — but evidence of a joint venture between Carnival and a different shipboard doctor does not tend to

prove a joint venture between Carnival and Dr. Campino. Whether a joint venture exists is a case-specific question that depends on the relationship between two (or more) parties. Plaintiff cannot simply rely on evidence from a different case, and the Response curiously lacks analysis or discussion of the evidence Plaintiff obtained during jurisdictional discovery *in this case*.

Second, "[a] party may not adopt legal arguments raised in separate legal proceedings, as [the Eleventh Circuit] ha[s] held that [it] will not consider any arguments that a party attempts to make by incorporating by reference arguments made in other district court pleadings." *Dixit v. Dixit*, 796 F. App'x 561, 563 (11th Cir. 2019) (alterations added; citing *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr S.A.*, 377 F.3d 1164, 1167 n.4 (11th Cir. 2004)). Put another way, "judges 'are not like pigs, hunting for truffles buried in briefs.'" *Chavez v. Sec'y Fla. Dep't of Corrs.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). The Court declines to go scavenging in a brief filed in *a different action* to find winning arguments for Plaintiff.[2]

Third — and perhaps most importantly — the plaintiff *lost* in *Terry*. *See* 2018 WL 1894728, at *6 ("[T]he Plaintiff has not met her burden in establishing that a joint venture exists such that jurisdiction should be conferred on the Defendant." (alteration added)). That's right — the lynchpin of Plaintiff's case cuts against her; most of her Response is dedicated to arguing the result in *Terry* was wrong. (*See* Resp. 5–10). This approach is wholly unpersuasive.

In *Terry*, one of Carnival's shipboard doctors allegedly failed to properly diagnose and treat the plaintiff's impending stroke. *See* 2018 WL 1894728, at *1. The plaintiff sued Carnival and the doctor on a theory of joint venture, and the doctor moved to dismiss for lack of personal

---

[2] That Plaintiff chose to incorporate legal arguments from another action for "brevity" (Resp. 4) is even more odd considering the Response is barely 10 pages long and thus 10 pages under the Rule's page limit.

jurisdiction. *See id.* Despite previously denying a motion to dismiss the "joint venture" count for failure to state a claim for relief, the court granted the doctor's motion to dismiss for lack of personal jurisdiction. *See id.* at *5–6.

In addition to the essentials of an ordinary contract, a plaintiff asserting that personal jurisdiction exists by virtue of a joint venture between the defendants must first prove the existence of a joint venture. Courts consider five elements in determining the existence of a joint venture: "1) a community of interest in the performance of the common purpose, 2) joint control or right of control, 3) a joint proprietary interest in the subject matter, 4) a right to share in the profits, and 5) a duty to share in any losses which may be sustained." *Id.* at *5 (quotation marks omitted; quoting *Sutton v. Smith*, 603 So. 2d 693, 698 (Fla. 1st DCA 1992)).

The plaintiff in *Terry* lacked evidence "indicating a joint proprietary interest, right to share in the profits, and duty to share in the losses," despite her "ability to engage in jurisdictional discovery in an attempt to cure those deficiencies." *Id.* According to the court, the evidence provided described "a more typical employer/employee relationship rather than a joint venture" because the shipboard doctor had to comply with Carnival's general operational guidelines, Carnival's medical department set the shipboard medical facilities' hours and procedures, and there was no evidence that the doctor shared in the profits and losses of the alleged joint venture. *Id.* In sum, the plaintiff failed to produce "enough evidence to withstand a motion for directed verdict" and thus did not meet "her burden in establishing that a joint venture exists such that jurisdiction should be conferred on" the doctor. *Id.* at *6.

According to Plaintiff, the court in *Terry* improperly weighed the joint venture factors "as a checklist or as prerequisites," despite an Eleventh Circuit case stating "that [c]ourts should 'look to the whole relationship to determine whether or not the facts support the conclusion that a joint

7

venture existed.'" (Resp. 6 (alteration added; quoting *Fulcher's Point Pride Seafood, Inc. v. M/V Theodora Maria*, 935 F.2d 208, 211 (11th Cir. 1991))). Further, Plaintiff insists the court in *Terry* mishandled the law regarding the duty to share in the losses of a joint venture; as support, she cites a decision stating one party to a joint venture may supply labor, experience, and skill, while the other provides capital. (*See id.* (citing *Fla. Tomato Packers, Inc. v. Wilson*, 296 So. 2d 536, 539 (Fla. 3d DCA 1974))).

The court in *Terry* did not only rely on an ostensible lack of profit and loss sharing to determine the plaintiff failed to establish a joint venture existed — it also considered the lack of joint control. Indeed, the court noted the shipboard doctor was required to comply with Carnival's general operational guidelines and Carnival's medical department set the hours and procedures for the shipboard medical facilities. *See Terry*, 2018 WL 1894728, at *5. The shipboard doctor and Carnival had a typical employer/employee or independent contractor relationship, rather than a joint venture agreement. *See id.* at *5 & n.6.

This case is analogous to *Terry*, as evidenced by Plaintiff's attempt to incorporate arguments and evidence from that case. Carnival exercises substantial control over Dr. Campino: in her Independent Contractor Agreement, Dr. Campino agreed "to comply with and be bound by shipboard rules as existing from time to time"; "to comply with [Carnival's] Medical Department protocols and guidelines"; and to "perform additional duties as requested by [her] shipboard immediate supervisor or by [Carnival]'s Medical Director or designee." (Resp. 8 (alterations added; quotation marks omitted; quoting Independent Contractor Agreement ¶ 14)).

Moreover, Dr. Campino is paid a standard rate under the Independent Contractor Agreement — her compensation does not change based on Carnival or the medical center's profitability. (*See* Independent Contractor Agreement ¶ 3). Dr. Campino also "does not procure

8

supplies for the medical center[.]" (Reply 3 (alteration added)). Altogether, Dr. Campino and Carnival have either an employer/employee or independent contractor relationship rather than a joint venture.[3]

In short, as in *Terry*, "Plaintiff has not met her burden in establishing that a joint venture exists such that jurisdiction should be conferred on" Dr. Campino. 2018 WL 1894728, at *6. And because Plaintiff hangs her hat on this argument, Dr. Campino's Motion to Dismiss is due to be granted.

## IV. CONCLUSION

Dr. Campino has satisfied her burden of making a prima facie showing that Florida's long-arm statute does not extend to her, and Plaintiff has failed to substantiate her jurisdictional allegations.[4] Accordingly, it is

**ORDERED AND ADJUDGED** that Defendant, Dr. Dayan Fanery Campino Castillo's

---

[3] As Dr. Campino notes, Plaintiff's cited case, *Fulcher's Point Pride Seafood, Inc.*, is inapposite. (*See* Reply 3–5; Resp. 6–8). There, a man named Chris Fulcher, who ran a company that owned a commercial fishing dock and packing house, entered into an agreement with a man named John Caustin, who owned two fishing boats. *See Fulcher*, 935 F.2d at 209–10. Caustin agreed to send his boats to Fulcher's dock; and Fulcher agreed to provide supplies, other necessaries, and ship captains familiar with the area. *See id.* at 210. Fulcher exercised extensive control over Caustin's boats by, for example, hiring and firing captains, directing the kinds of fishing the boats would engage in, and converting the vessels for scallop fishing. *See id.* While the parties did not share losses or directly share profits, Fulcher benefited from the increased business at his dock. *See id.* The Eleventh Circuit affirmed the district court's finding of a joint venture despite the lack of profit-sharing because "of the strong control elements in th[e] case[.]" *Id.* at 212 (alterations added).

*Fulcher's* stands for the proposition that strong evidence of one joint venture factor, such as control, may overcome the lack of evidence establishing another factor, such as profit-sharing. Similar evidence is not present here. Even if Dr. Campino shared in the profits and losses of Carnival's business — which the Court is skeptical of — Carnival clearly exercises strong control over Dr. Campino, as opposed to the parties sharing significant control.

[4] The Court need not conduct the due process analysis because Dr. Campino is not subject to personal jurisdiction. *See Snow*, 450 F.3d at 1319 (not reaching the due process analysis where the defendant was not subject to jurisdiction under Florida's long-arm statute).

Motion to Dismiss for Lack of Personal Jurisdiction **[ECF No. 84]** is **GRANTED**. Dr. Dayan Fanery Campino Castillo is **DISMISSED** without prejudice.[5]

**DONE AND ORDERED** in Miami, Florida, this 4th day of May, 2022.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:   counsel of record

---

[5] Because the Court permitted Plaintiff ample time to conduct jurisdictional discovery and cure any defective jurisdictional allegations in the Amended Complaint, it will not afford Plaintiff another opportunity to remedy her inadequate jurisdictional showing.